[Crim. No. 22542. Second Dist., Div. One. July 6, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
ANNIE RUTH HARMON, Defendant and Respondent.

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■

## Counsel

Joseph P. Busch, District Attorney, Harry B. Sondheim and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## Opinion

**LILLIE, J.**—By information defendant was charged with the murder of Johnnie Lee Jackson (§ 187, Pen. Code). Her motion to set aside the information (§ 995, Pen. Code) was granted. She argued, on the basis of testimony that before Mrs. McCullough heard two shots she heard a female voice say, "You are going to kill me, you are going to kill me," that the evidence showed self-defense. The People appeal from the order.

Jackson died of a gunshot wound of the abdomen inflicted by defendant with a .22 caliber Derringer pistol.

Mrs. McCullough lived in the apartment directly over the one occupied by Jackson and defendant. Around 5:30 a.m. she was awakened by "rumbling noises" which sounded "like turning over things or running over something," and voices; she then heard a female voice say, "You are going to kill me. You are going to kill me" and, in "less than 10 minutes," a sound like two "firecracker shots" and a door slam, and saw a woman run down the sidewalk, get into an orange car, which she had previously seen defendant drive, and leave.

■■■■■

Around 5:25 a.m. defendant walked into the police station saying to Officer Smith, "I want to report a murder"; she gave her address, name and identification showing she was an employee of the Los Angeles Police Department, and said, "I shot him. He jumped on me and I shot him," or "I killed him"; she appeared to be excited but not fearful. Officer Smith took defendant to Sergeant Jensen; as she came through the door defendant was talking about how she had had her husband (Jackson) arrested for battery twice, he had been arrested for narcotics and the police would not keep him in jail, and she had told Jackson that if he "ever hit her again, she was going to kill him, and stated that she did kill him that night about five minutes ago"; she said, "he was choking me and I told him if he jumped on me again I would kill him . . . I have made ADW reports on him"; she talked very fast and appeared to be excited; she said that she had hit Jackson in the head with a gun and thrown it back inside the bedroom before she left.

Officer Herman, also present in Sergeant Jensen's office, heard defendant say, "I was going to shoot him if he kept beating on me and I did. I shot him." He then went to the apartment which was in general disarray; Jackson's body was in the bedroom in a sitting position at the corner of the bed on the floor. Officer Edwards found a .22 Derringer under a blanket at the foot of the deceased near the bedroom door; it had two spent cartridge cases inside; a spent bullet was found in the dirt outside the bedroom window which had a hole in it.

"An information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) 'On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated.' (*People* v. *Jablon* (1957) 153 Cal.App.2d 456, 459 [314 P.2d 824].) Neither the trial court in a section 995 proceeding (*People* v. *Landry* (1964) 230 Cal.App.2d 775, 779 [41 Cal.Rptr. 202]; *Hacker* v. *Superior Court* (1968) 268 Cal.App.2d 387, 392-393 [73 Cal.Rptr. 907]) nor a reviewing court on appeal therefrom (*Rideout* v. *Superior Court, supra,* 67 Cal.2d at p. 474; *People* v. *Cirilli* (1968) 265 Cal.App.2d 607, 612-613 [71 Cal.Rptr. 604]) may substitute its judgment as to the weight of the evidence for that of the committing magistrate. 'Although the magis-

trate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order.' (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529].) Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*Rideout* v. *Superior Court, supra,* 67 Cal.2d 474.)" (*People* v. *Hall,* 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].)

An essential element of either first or second degree murder is malice (*People* v. *Bender,* 27 Cal.2d 164, 180 [163 P.2d 8]) which may be inferred from the circumstances of the homicide. Section 188, Penal Code, in part declares that such malice "is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Thus, " 'When the killing is proved to have been committed by the defendant, and nothing further is shown, *the presumption of law is that it was malicious and an act of murder;* but in such a case the verdict should be murder of the second degree, and not murder of the first degree.' . . . (*People* v. *Craig* (1957) 49 Cal.2d 313, 319 [316 P.2d 947], quoting from *People* v. *Howard* (1930) 211 Cal. 322, 329 [295 P. 333, 71 A.L.R. 1385]; accord, *People* v. *Terry* (1962) 57 Cal.2d 538, 556 [21 Cal.Rptr. 185, 370 P.2d 985]; *People* v. *Cole* (1956) 47 Cal.2d 99, 106 [301 P.2d 854, 56 A.L.R.2d 1435]; *People* v. *Bender* (1945) *supra,* 27 Cal.2d 164, 179.) A further refinement of that rule has been developed in cases where the homicide results from an assault with a deadly weapon: 'When it is proved that defendant assaulted decedent with a dangerous weapon in a manner endangering life and resulting in death and the jury concludes that the evidence did not create in their minds a reasonable doubt whether defendant's act may have been justified or its criminal character mitigated by the influence of passion (e.g., of terror, *People* v. *Logan,* 175 Cal. 45, 48, 49 [164 P. 1121]) then no further proof of malice or of intent to kill is required to support a verdict of guilty of second degree murder. Of that crime an actual intent to kill is not a necessary component and malice is implied from such assault in the absence of justifying or mitigating circumstances.' (*People* v. *Torres* (1949) 94 Cal.App.2d 146, 149-150 [210 P.2d 324]; accord, *People* v. *Isby* (1947) 30 Cal.2d 879, 889 [186 P.2d 405]; *People* v. *McAuliffe* (1957) 154 Cal.App.2d 332, 338 [316 P.2d 381]; *People* v. *Butterfield* (1940) 40 Cal.App.2d 725, 729 [105 P.2d 628].)

"These rules of substantive law are implemented by Penal Code section 1105, which provides that 'Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving cir-

cumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.'" (*Jackson* v. *Superior Court*, 62 Cal.2d 521, 525-526 [42 Cal.Rptr. 838, 399 P.2d 374].)

The magistrate in holding defendant to answer to the charge of murder obviously found the evidence to be insufficient to overcome the presumption referred to in *Jackson*. Offered by the People were a variety of statements made by defendant, none of which shows self-defense or other justification. They range from "I want to report a murder" to "he was choking me and I told him if he jumped on me again I would kill him"; and it was the responsibility of the magistrate to give weight to the most credible statement under the circumstances in determining whether there was probable cause to hold defendant to answer for murder. Having held defendant to answer on the murder charge the magistrate gave weight to incriminating statements that did not allow for self-defense. Defendant's statements to the police officers are not susceptible of only one interpretation, but they do show a past history of violence between her and Jackson. Drawing from the evidence every legitimate inference we are entitled to draw in favor of the information (*Rideout* v. *Superior Court*, 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]), we find the sum of those statements— "I want to report a murder" and, "he jumped on me," if he "ever hit [me] again," "if he jumped on me again," "if he kept beating on me," "I would kill him"—leads to one of two conclusions: (1) that defendant killed Jackson to stop a nonfelony battery or (2) that she shot him because she tired of his abuse or for revenge because of his treatment of her. Nothing in any of the statements establishes her fear of immediate danger of great bodily injury. Even giving credence to the statement, "He was choking me and I told him if he jumped on me again I would kill him," to warrant a holding that the killing was justifiable homicide in self-defense the evidence must also support a finding that she killed Jackson in reasonable fear of immediate danger of great bodily injury (Pen. Code, § 197, subd. 3)— the circumstances must be "sufficient to excite the fears of a reasonable person" and she "must have acted under the influence of such fears alone" (§ 198, Pen. Code; *Jackson* v. *Superior Court*, 62 Cal.2d 521, 529 [42 Cal.Rptr. 838, 399 P.2d 374])—and nothing in the record supports such a finding. The same may be said of the statement made by a female voice twice heard by Mrs. McCullough, "You are going to kill me," less than 10 minutes before she heard two shots, if the same be attributed to defendant. However, it is apparent that the magistrate was unwilling, under the circumstances recited by Mrs. McCullough and in light of defendant's subsequent statements, to either accord the statement the weight to which

the superior court judge subsequently felt it was entitled or to attribute the statement to defendant.

■ From an examination of the testimony taken at the preliminary hearing in light of the foregoing rules, we conclude that there was probable cause to hold defendant to answer. ■ A magistrate may commit a defendant even though there may be doubt as to his guilt. (*Jackson* v. *Superior Court,* 62 Cal.2d 521, 530 [42 Cal.Rptr. 838, 399 P.2d 374]; *People* v. *McRae,* 31 Cal.2d 184, 187 [187 P.2d 741].) ■ Nor can we say that the evidence compelled the magistrate as a matter of law to find that the homicide was committed in self-defense. The superior court was in error in substituting its judgment as to the weight of the evidence for that of the committing magistrate.[1] We express no opinion at this time as to the merits of any evidence tending to show provocation or self-defense.

The order is reversed.

Wood, P. J., and Thompson, J., concurred.

---

[1]The superior court in a section 995 proceeding could only determine whether the committing magistrate, acting as a man of ordinary caution and prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed by defendant, and may not substitute its judgment as to the weight of the evidence for that of the committing magistrate. That the superior court did so in this case is obvious from its only comment in granting the motion, "I don't see how I can have a reasonable suspicion."