[Crim. No. 27700. Second Dist., Div. Three. May 24, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
MERLE FRANCIS WASHINGTON, Defendant and Appellant.

**Counsel**

Henry P. Crabtree, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**ALLPORT, J.**—Following trial by jury defendant was convicted of murder in violation of Penal Code section 187, which was found to be in the second degree. The allegation of use of a firearm was found to be true. He was sentenced to state prison and now appeals from the judgment.

*Facts*

In view of the contentions made on appeal a plenary statement of the facts surrounding this sordid affair is not necessary. Suffice to say that the victim Owen Wilson Brady met his death when shot by his homosexual partner Merle Francis Washington on August 10, 1974, while the two were riding in the victim's car. The killing resulted from a lover's quarrel, claimed to have been provoked by unfaithfulness on the part of the victim and his expressed desire to terminate the relationship.

*Contentions*

It is contended on appeal that because of instructional error and inadequacy of defense trial counsel, the conviction should either be reversed or reduced to voluntary manslaughter by this court.

*Discussion*

█ If we understand correctly it is first suggested by defendant that, in defining second degree murder and voluntary manslaughter, the trial court should have instructed the jury that there must exist a *deliberate,* unlawful, intent to kill before the jury can find express malice.

Penal Code section 187 defines murder of the second degree as the *unlawful* killing of a human being with malice aforethought. The jury was so instructed. Section 192 defines voluntary manslaughter as the *unlawful* killing of a human being without malice upon a sudden quarrel or heat of passion. The jury was so instructed. Section 188 defines express malice to exist when there is manifested a *deliberate intention unlawfully* to take away the life of a fellow creature. The jury was instructed that "malice is express when there is manifested an intention *unlawfully* to kill a human being." (Italics added.) It is argued that, although the trial court in instructing on murder in the first degree defined the word *deliberate,* no instruction was given advising the jury that the malice aforethought required for conviction of second degree murder must be inferred from a *deliberate intention unlawfully* to kill not simply from an unlawful killing. Thus the question before us is whether by failing *sua sponte* to include the term deliberate in the definition of express malice as applied to a second degree murder charge, the trial court committed prejudicial error.

We conclude the failure to do so was not error. Malice aforethought as required in second degree murder is not synonymous with the term deliberate as used in defining first degree murder. (*People* v. *Thomas,* 25 Cal.2d 880, 901 [156 P.2d 7].) To hold otherwise would obliterate the distinction between the two degrees of murder. In *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8], our Supreme Court said at pages 180-182:

"It is implicit in the above-quoted definitions that malice aforethought is, as above mentioned, an essential element of murder of the second as well as of the first degree and that such malice aforethought is not synonymous with the elements of deliberation and premeditation which must accompany a homicide to characterize it as murder of the first degree. Obviously, if malice aforethought necessarily included or presupposed a deliberate and premeditated intent then all murder would be of the first degree because any homicide, to constitute murder at all, must be an unlawful killing with malice aforethought; and the Legislature would be guilty of an utterly meaningless classification of murder into two degrees, with no field in which the second could operate. Likewise it is obvious that the mere intent to kill is not the equivalent of a deliberate and premeditated intent to kill. The intent to kill exists in voluntary manslaughter but for such a homicide, where the evidence shows merely the intent to kill (coupled, of course, with actual killing) but does not show premeditation, deliberation, or malice, either express or implied, the Legislature, recognizing the frailty of human nature and the effect of great provocation, has set up a separate class and assessed a lighter penalty than is provided where the other elements exist. . . .

"Murder of the second degree: a willful act characterized by the presence of malice aforethought and, at least ordinarily, by the specific intent to kill, and by the absence of premeditation and deliberation."

In *People* v. *Craig,* 49 Cal.2d 313, 319 [316 P.2d 947], the court quotes from *People* v. *Howard,* 211 Cal. 322, 329 [295 P. 333, 71 A.L.R. 1385], saying " 'When the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree and not murder of the first degree.' " (See also *People* v. *Harmon,* 33 Cal.App.3d 308, 311 [108 Cal.Rptr. 43].) In the instant case it was shown that defendant committed the homicide. The jury was instructed that malice could be inferred from that fact. The failure to instruct *sua sponte* that the killing must be deliberate as well as

unlawful before express malice may be inferred from the commission of an intentional homicide was not error.

It is next suggested that, in defining "heat of passion" necessary to reduce murder to manslaughter in a case involving a homosexual, it is error to use the standard of "an ordinarily reasonable person of average disposition" but rather should be tested by a standard applicable to a female or to the average servient homosexual.

In this respect the jury was instructed that to reduce the homicide from murder to manslaughter upon the ground of sudden quarrel or heat of passion, the conduct must be tested by the ordinarily reasonable man test. Defendant argues without precedent that to so instruct was error because, "Homosexuals are not at present a curiosity or a rare commodity. They are a distinct third sexual class between that of male and female, are present in almost every field of endeavor, and are fast achieving a guarded recognition not formerly accorded them. The heat of their passions in dealing with one another should not be tested by standards applicable to the average man or the average woman, since they are aberrant hybrids, with an obvious diminished capacity.

"Defendant submits that since the evidence disclosed that he was acting as a servient homosexual during the period of his relationship with the victim, that his heat of passion should have been tested, either by a standard applicable to a female, or a standard applicable to the average homosexual, and that it was prejudicial error to instruct the jury to determine his heat of passion defense by standards applicable to the average male."

We do not agree. In *People* v. *Bridgehouse,* 47 Cal.2d 406, 413 [303 P.2d 1018], it was said: "To be sufficient to reduce a homicide to manslaughter, the heat of passion must be such as would naturally be aroused in the mind of an ordinary, reasonable person, under the given facts and circumstances, or in the mind of a person of ordinary self-control. (*People* v. *Valentine,* 28 Cal.2d 121 [169 P.2d 1]; *People* v. *Danielly,* 33 Cal.2d 362 [202 P.2d 18].)"

In *People* v. *Morse,* 70 Cal.2d 711, 734-735 [76 Cal.Rptr. 391, 452 P.2d 607], cert. den., 397 U.S. 944 [25 L.Ed.2d 124, 90 S.Ct. 959], the test announced in *Bridgehouse, supra,* was applied, the court saying in addition that "the evidence of defendant's extraordinary character and environmental deficiencies was manifestly irrelevant to the inquiry." In

*People* v. *Logan,* 175 Cal. 45, 48-49 [164 P. 1121], the applicable test is clearly stated where the court said: "In the present condition of our law it is left to the jurors to say whether or not the facts and circumstances in evidence are sufficient to lead them to believe that the defendant did, or to create a reasonable doubt in their minds as to whether or not he did, commit his offense under a heat of passion. The jury is further to be admonished and advised by the court that this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances, and that, consequently, no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man. Thus, no man of extremely violent passion could so justify or excuse himself if the exciting cause be not adequate, nor could an excessively cowardly man justify himself unless the circumstances were such as to arouse the fears of the ordinarily courageous man. Still further, while the conduct of the defendant is to be measured by that of the ordinarily reasonable man placed in identical circumstances, the jury is properly to be told that the exciting cause must be such as would naturally tend to arouse the passion of the ordinarily reasonable man."

In the instant case the jury was properly instructed to use the ordinarily reasonable man test.

■ It is further contended that it was error to instruct that evidence of provocation, if not such as to reduce murder to manslaughter, may be considered by the jury on the question of whether the killing was murder of the first or second degree.

We find it unnecessary to consider the academic argument as to the propriety of such instructions in the case at bench. We fail to see from our examination of the entire cause wherein the error, if any, has resulted in a miscarriage of justice (Cal. Const., art. VI, § 13) since defendant was convicted of second degree murder.

■ Finally it is contended that the failure of trial defense counsel to exploit and emphasize that defendant was a full-fledged homosexual reduced the trial to a farce and sham within the meaning of *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487], by depriving him of the benefit of the heat of passion instruction suggested, *supra,*

containing the standard of a female or a servient homosexual rather than that of an ordinary man as well as an instruction on diminished capacity.

The contention is without merit. As pointed out above, an instruction testing heat of passion on the basis of homosexuality was not available to defendant. The failure of counsel to pursue the subject with respect thereto cannot be deemed *Ibarra* error. In addition there is no showing that counsel did not investigate and consider the possibility of a diminished capacity defense. The record shows defendant was examined for psychiatric purposes on motion of the defense and that counsel had read the report. His failure to urge a defense of diminished capacity is presumed to be a tactical decision under the circumstances. A decision respecting the use of a particular defense has been held not to amount to *Ibarra* error. (*In re Mosley,* 1 Cal.3d 913, 924 [83 Cal.Rptr. 809, 464 P.2d 473], cert. den., 400 U.S. 905 [27 L.Ed.2d 142, 91 S.Ct. 144]; *People* v. *Floyd,* 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64], cert. den., 406 U.S. 972 [32 L.Ed.2d 672, 92 S.Ct. 2418].) Furthermore, a mere sociopathic personality with schizoid tendencies is insufficient without more to authorize an instruction on diminished capacity. (*People* v. *Powell,* 40 Cal.App.3d 107, 162-163 [115 Cal.Rptr. 109], cert. den., 420 U.S. 994 [43 L.Ed.2d 677]; see also *In re Walker,* 10 Cal.3d 764, 785 [112 Cal.Rptr. 177, 518 P.2d 1129], wherein it was stated that a mere unstable personality and emotional instability without more are insufficient to suggest an inability to harbor the requisite mental state.)

The judgment is affirmed.

Ford, P. J., and Potter, J., concurred.