Filed 3/1/23  P. v. Smith CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B317371 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A762389) |
| v. | |
| RODNEY TOMMY SMITH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Shelly B. Torrealba, Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel Chang and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Defendant Rodney Tommy Smith was convicted in 1985 of second degree murder in connection with a gang related drive-by shooting. The conviction was later affirmed on direct appeal. In 2019, defendant filed a petition to be resentenced under former Penal Code section 1170.95.[1] The trial court appointed counsel for defendant, held an evidentiary hearing, and after hearing argument denied the petition.

Defendant now appeals the denial of his resentencing petition. Defendant contends the trial court applied an incorrect standard of proof, did not act as an "independent factfinder," considered inadmissible evidence, and erred in using a theory of criminal liability not relied upon at his original trial. Defendant further argues substantial evidence does not support the trial court's factual findings. We find no merit in any of defendant's contentions and affirm the denial of the resentencing petition.

## FACTUAL BACKGROUND

### A. The Offense Conduct

We take the following facts from the transcript of defendant's trial. In January 1985, defendant (who was also known as Snowman) was 19 years old and a member of the Crips street gang. On the afternoon of January 30, 1985, defendant

---

[1] Unspecified statutory references are to the Penal Code. After the proceedings in the trial court, the Legislature renumbered section 1170.95 as section 1172.6, with no change in the text of the statute (Stats. 2022, ch. 58, § 10, eff. June 30, 2022). For the sake of clarity given that the law was codified at former section 1170.95 at the time of the trial court proceeding, we (as the parties likewise do in their briefs) refer to the statute by its former number.

was on foot in rival gang territory near the intersection of 46th Street and Crenshaw Boulevard in Los Angeles. Coming around the corner, defendant encountered Deradous Harris walking with some friends. Before Harris and his friends could react, defendant said, "Now what's up" and fired four shots from a distance of 25 to 30 feet. A bullet struck Harris above the left ankle, passing through his leg.

Two days later, on the afternoon of February 1st, defendant was driving his car near the intersection of 48th Street and 9th Avenue in Los Angeles. This neighborhood was in territory claimed by a rival gang. While driving on 9th Avenue, defendant stopped the car and fired a single shot towards Willie Rubin, Andre West and Maurice McIntosh. No one was struck and defendant drove away.

On the night of February 2nd, Rubin and Marvin McIntosh (Maurice McIntosh's brother)[2] were outside a home on 9th Avenue when they saw a car turn onto the street. The car slowed down and its headlights were turned off. Because the car looked suspicious, Rubin and Marvin ducked behind a car parked in the driveway. The car drove past them and stopped. Rubin recognized defendant as the driver of the car. Two shots were fired from the car, after which Rubin heard someone from the car say "cuz"—a word indicating hostility to the Bloods gang members. One of the shots struck Marvin in the head; he died as a result of the gunshot wound. After the shots were fired defendant "just took off across 48th [Street]" and kept going.

---

[2] Because Marvin and Maurice share the same surname, we use their first names to avoid confusion and not out of any disrespect.

Earlier that night, prior to the shooting, Ronnie Luke saw defendant and Rogelio "Loco Doc" Cordoba leave in defendant's car. Defendant returned alone and told Luke that he and Cordoba had gone "riding" in the "Fifties' hood," referring to territory of the Fifties Blood gang, and that he and Cordoba "had just shot at some bloods down on 9th Avenue." According to defendant, he and Cordoba "drove by on the street" and Cordoba yelled "Harlem Crips Rollin' Thirties" before firing. Luke told defendant that it was "stupid to do that in his car and that he and Loco Doc [Cordoba] were going to get in trouble," to which defendant responded, "Well, they shouldn't be blasting at us all the time."

After this conversation with defendant, Luke got in his car and drove by the neighborhood to which defendant had referred. When there, Luke saw "the ambulance and the police cars and stuff like that." The next morning Luke was present when someone told defendant that "M Bone [Marvin] was dead," to which defendant answered, "then Loco Doc [Cordoba] is in trouble."

On the afternoon of February 6, 1985, Los Angeles Police Department Detective Jerry Johnson interviewed Cordoba at the 77th Street Division station. In response to questions,[3] Cordoba stated that he was riding with defendant in defendant's car on the evening of February 2nd when they were fired on by rival gang members in the 4900 block of 9th Avenue. According to

---

[3] The court admitted Cordoba's statements only as to Cordoba; the court sustained a hearsay objection to their admission as to defendant. We set forth these statements to help explain both parties' closing arguments and defendant's claim of self-defense.

Cordoba, defendant stopped the car, backed up a few feet, and told Cordoba to "buss on them," meaning to "shoot at them," with a .38 caliber revolver that defendant handed to Cordoba.[4] Defendant encouraged Cordoba to shoot, telling him, "don't be a mark"—that is, not to be a coward. Cordoba told Detective Johnson "that he leaned out or crawled partially out of the passenger window and fired the weapon over the top of the car in the direction of where the victim and persons were standing in front of the residence."

## B. Defendant's Trial

Defendant was charged with one count of first degree murder (§ 187, subd. (a)) for the killing of Marvin and one count of assault with a deadly weapon for shooting at Rubin on February 2, 1985 (§ 245, subd. (a)(2)). In addition, defendant was charged with three counts of assault by means of force likely to produce great bodily injury for shooting at Harris on January 30, 1985, and at Rubin and West on February 1, 1985. Cordoba was also charged.

Defendant and Cordoba waived a jury and the court tried them together. The People called as witnesses Luke, Harris, Maurice, Rubin and Detective Johnson, who all testified to the events summarized above. In addition, the parties stipulated

---

[4] Detective Johnson could not recall the exact point in the sequence of events when defendant gave Cordoba the revolver. Johnson testified that Cordoba told him "that after the group in front of the house fired at them, [defendant] stopped the car. And I don't recall if he said at that point [defendant] gave him the gun, or if [defendant] backed up and then gave him the gun. I don't recall. But, at some point, either before or after [defendant] backed the car up, Cordoba was given a gun by [defendant]."

5

that a forensic pathologist, Dr. Bolduck, performed an autopsy on Marvin and determined his cause of death was a gunshot wound to the head.

Neither defendant testified. The parties stipulated that the sole defense witness, Kendall Turner, would testify that he "heard a pop, which he described as a small caliber gunshot," followed by "two loud bangs, which he recognized as large caliber gunshots," after which he saw defendant's car leaving the scene.

Citing Turner's testimony that Cordoba fired after being fired upon, defendant argued that the February 2, 1985 shooting was "a classic case of self-defense." The People argued that defendant aided and abetted Marvin's murder: "This is a planned hunt, in essence. They've turned the lights out as they're cruising down the streets looking for a potential victim." The prosecution also disputed the claim of self-defense: "Even if we accept . . . Cordoba's statement that he was fired upon first, what happened in this case was that shots were fired, and . . . defendant . . . stopped the car, put the car in reverse and backed it up to approach to get closer to the intended victims in this case. This was not a self-defense situation. What happened was they stopped the car and backed up so they could be closer to the victims."

The trial court acquitted defendant of first degree murder, but found him guilty of second degree murder as well as guilty on the assault counts.[5] The court also found true special allegations relating to firearm use. For the murder of Marvin, the court sentenced defendant to 15 years to life in state prison plus an additional year for the use of a firearm, for a total of 16 years to

---

[5] The court also convicted Cordoba.

life.  On the count of assault with a firearm on Rubin, the court sentenced defendant to the middle term of three years, to run consecutively with the life term.  On the remaining counts, for shooting at Harris on January 30, and at Rubin and West on February 1, the court sentenced defendant to the middle term of three years, running concurrently with his sentence on the murder charge.

In an unpublished opinion, a panel of this court affirmed defendant's conviction.  (*People v. Cordoba et al.* (June 30, 1988, B019212).)  Defendant later filed a habeas corpus petition in the Los Angeles Superior Court; that court denied the petition in 2016.  (*In re Rodney Tommy Smith* (Aug. 11, 2016, A762389).)

## C.      Defendant's Petition for Resentencing

On January 4, 2019, defendant filed a petition for resentencing under former section 1170.95.  Defendant's petition alleged that he had been convicted of second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine and that he could not now be convicted of second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.  At defendant's request, the trial court appointed counsel to represent him.

The People opposed defendant's petition.  While the primary ground of opposition was that former section 1170.95 was unconstitutional,[6] the People also opposed relief because

---

[6] Prior to the evidentiary hearing in this matter, our court—like other appellate courts that considered the issue—determined that former section 1170.95 was constitutional.  (See, e.g., *People v. Bucio* (2020) 48 Cal.App.5th 300, 308.)  The People

defendant was convicted under section 187 "as a direct aider and abettor to the killing rather than as an accomplice to an underlying crime under a felony murder theory or natural and probable consequences theory, rendering him ineligible for [former] section 1170.95 resentencing." Specifically, the People argued that defendant "directly aided and abetted his co-defendant in shooting a firearm at the victim and as such displayed implied malice, a basis for a second degree murder conviction which has not been restricted by the 2019 changes to sections 188 or 18[9]."

Defendant contended in reply that amendments to "section 188 requiring that a principal in a murder 'shall act with malice aforethought,' combined with the prohibition against imputing malice from participation in a crime, . . . has eliminated imputing implied malice for second degree murder to an aider and abettor." Defendant further asserted that addressing a "new theory of murder liability" at the resentencing hearing that is different than the one presented at trial, would violate the due process and double jeopardy clauses of both the federal and California constitutions.

## D. Denial of Defendant's Petition

The People conceded that defendant had made a prima facie showing that he was entitled to relief, and the trial court held an evidentiary hearing on defendant's petition on October 12, 2021.

Prior to the hearing the People filed five exhibits, including the unpublished Court of Appeal opinion affirming defendant's

abandoned this argument at the evidentiary hearing, and it is not an issue on appeal.

conviction, the complete transcript of defendant's bench trial, a 2009 comprehensive risk assessment prepared for the Board of Parole Hearings, a 2004 mental health evaluation for the Board of Prison Terms, and a 1990 psychological evaluation for the Board of Prison Terms (collectively, the assessments).  Defendant offered no exhibits.  On the day after the hearing, defendant filed a brief agreeing that both the trial transcript and the 1988 appellate opinion were admissible at the evidentiary hearing; defendant objected to the admission of the 2009, 2004, and 1990 assessments on hearsay related grounds.

At the hearing, the People argued that defendant was guilty of aiding and abetting as well as implied malice second degree murder and thus not entitled to relief.  The prosecutor argued defendant committed a planned attack:  "He went into rival gang territory.  He wasn't just sort of harmlessly minding his own business and found himself under some kind of an attack where self-defense was necessary.  It's not a self-defense situation.  It was a drive-by gang shooting."  The prosecutor agreed there was not "an intent to kill, per se, and that's why we're talking about implied malice.  The idea was to shoot at these guys and to send a message or a warning," but the defendant knew "drive-by shootings kill people and he proceeded in spite of that and someone got killed and it's implied malice."

Defense counsel stressed defendant was not the actual killer and argued he acted in self-defense.  After defendant and Cordoba were shot at, Cordoba "took it upon themselves to fire upon them, not intending to kill anybody, but to scare them off, do something else [other] th[a]n inflict great bodily harm on somebody."  Defense counsel argued these facts "have to be considered by the court in determining whether or not

[defendant]'s participation in this action, if it is participation, whether or not he was just simply the driver and not knowing that Cordoba planned to do anything serious." Accordingly, counsel argued, defendant was not an aider and abettor, and was not a major participant who acted with reckless indifference to human life.

After argument, the trial court indicated it would prepare a written decision, provide it to counsel, and then hold a further hearing where both counsel could respond to the court's written analysis. The hearing resumed on October 27, 2021. After presenting counsel its written ruling denying defendant's petition, the court offered both sides an opportunity to present further argument. Counsel for both parties declined, and the court made its written ruling final.

In ruling, the trial court found "[defendant] admitted to 'riding in Fifties' hood . . . and blasted some Fifties.' This admission established [defendant]'s knowledge of Cordoba having a gun. His actions of driving his car with co-gang member Cordoba with a gun, in hostile territory, cruising slowly down the street with headlights on, turning off the headlights, and stopping as Cordoba shot at victims Rubin and [Marvin] establish active participation in planned aggression. Moreover, his actions during the three days immediately prior to the murder of driving the same car into hostile gang territory, yelling 'Now what's up' and being the undisputed shooter in two assault convictions provide further corroboration. From this evidence, the trial court could reasonably infer [defendant]'s gang affiliation and knowledge of the ongoing rivalry with Fifties/Blood gang members. It was also reasonable for the trial court to infer [defendant] wanted the retaliatory drive-by shooting to occur

10

based on his repetitive and close-in-time conduct.  The evidence was more than sufficient to support the trial court's conclusion that [defendant] aided and abetted the shootings."  The trial court concluded that "the People have established proof beyond a reasonable doubt in accord with . . . [former] section 1170.95 and the [defendant] is ineligible for resentencing in this matter."

Defendant filed a timely notice of appeal.  We have jurisdiction pursuant to section 1237, subdivision (b).

## DISCUSSION

### A.    The Resentencing Statutes

"Effective January 1, 2019, the Legislature passed Senate Bill [No]. 1437 [(2017-2018 Reg. Sess.) (Senate Bill 1437)] 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant . . . who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)  Senate Bill 1437 amended section 188, subdivision (a)(3), to require that all principals to murder must act with either express or implied malice to be convicted of that crime, with the exception of felony murder under section 189, subdivision (e).  (Stats. 2018, ch. 1015, § 2.)  Senate Bill 1437 amended section 189, subdivision (e), to provide that for a felony murder conviction the defendant had to be the actual killer, an aider and abettor who acted with the intent to kill, or a major participant who acted with reckless indifference to human life in the underlying felony.  (Stats. 2018, ch. 1015, § 3.)

Senate Bill 1437 also added former section 1170.95, which provided a procedure for defendants convicted of murder to seek resentencing.  (Stats. 2018, ch. 1015, § 4.)  At the time of

11

defendant's evidentiary hearing, former section 1170.95, subdivision (a) provided that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition" for resentencing "when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."

Effective January 1, 2022—that is, after the trial court's decision denying defendant's petition for resentencing, and during the pendency of this appeal—Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) amended former section 1170.95 to state that (1) the burden of proof at a resentencing hearing under this section is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by [Senate Bill 1437]," and (2) "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (Fmr. § 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2.)  Senate Bill 775 also clarified that the trial court's role in a resentencing hearing is to act as an independent fact finder and determine, in the first instance, whether the petitioner committed murder under the law as

12

amended by Senate Bill 1437. (*People v. Clements* (2022) 75 Cal.App.5th 276, 294, 297; see also *People v. Garrison* (2021) 73 Cal.App.5th 735, 745, fn. omitted [trial court acts as "an independent fact finder, to determine beyond a reasonable doubt whether [the] defendant is guilty of murder under a valid theory of murder"].)

The People do not concede the retroactive application of all these changes to defendant's case but note that defendant could potentially file a new petition in the superior court under the amended provisions. As we find defendant's arguments meritless regardless of which statutory version controls, we assume for the sake of argument, and without deciding, that the changes to former section 1170.95 at issue in this matter apply retroactively to defendant's case.

## B.    Standard of Review

The interpretation of the statutory language of former section 1170.95—that is, the correct standard to be applied by the trial court in evaluating eligibility for resentencing—is a question of law that we determine de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981.) The trial court's determination that defendant is ineligible for relief because he is guilty of murder, beyond a reasonable doubt, is a determination of fact. (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 294 ["The question is whether the petitioner committed murder under a still-valid theory, and that is a factual question"].) We review the trial judge's factfinding for substantial evidence. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.)

13

## C. The Trial Court, Acting as an Independent Fact Finder, Applied the Correct Standard in Denying Defendant's Petition

Defendant first contends reversal is required because the trial court applied an incorrect standard when denying his petition. At the time of the hearing, former section 1170.95, subdivision (d)(3) stated that the prosecution's burden was "to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." Unsurprisingly, the trial court looked to this language when denying the petition, stating the People had the burden to "prove [defendant]'s ineligibility for re-sentencing beyond a reasonable doubt" and had met that burden.

While this matter was on appeal, the Legislature amended former section 1170.95, subdivision (d)(3) to provide in pertinent part that "[a]t the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." (Fmr. § 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2.)

Defendant argues we should reverse because the trial court relied on the standard in effect at the time of the hearing, rather than the one currently in force. Defendant's argument, however, ignores other statements made by the court while ruling. While the court made comments based on the then applicable standard of proof, it made further statements demonstrating that it found beyond a reasonable doubt that defendant had committed an offense that made him ineligible for relief. Specifically, in denying the petition the court found that "[t]he totality of the

14

evidence presented established proof beyond a reasonable doubt for . . . defendant's second degree murder conviction and he is ineligible for sentencing pursuant to . . . [former] section 1170.95." The court further found that the evidence was insufficient "to support [defendant]'s claim of unreasonable self-defense." Thus, when read in context, it is clear the trial court found the prosecution had proven beyond a reasonable doubt that defendant was guilty of murder "under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019" (fmr. § 1170.95, subd. (d)(3)), and we accordingly find no error in the legal standards applied by the court when it weighed the evidence.

Defendant argues we should not rely on these statements because the court elsewhere stated "there was sufficient evidence to convict [defendant] on an aider and abettor theory of liability," and that "the evidence presented supports [defendant]'s conviction under a theory of implied malice." Defendant argues these statements refer to the original trial court's determination of guilt in 1985, and thus do not reflect independent fact finding by the court hearing the resentencing petition.

"The very settled rule of appellate review is a trial court's order/judgment is presumed to be correct, error is never presumed, and the appealing party must affirmatively demonstrate error on the face of the record." (*People v. Davis* (1996) 50 Cal.App.4th 168, 172.) The record need not affirmatively demonstrate the trial court's application of the correct legal standard; instead, we presume the court applied the correct standard unless there is evidence to the contrary. (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 447.) Given the trial court's statement that the totality of the evidence presented at

15

the evidentiary hearing "established proof beyond a reasonable doubt for . . . defendant's second degree murder conviction," we do not read the other statements to which defendant refers as demonstrating a failure of independent factfinding. Indeed, the resentencing trial court's language elsewhere makes clear it was describing its own determination based on the evidence and argument presented to it, and not parroting some finding by another judicial officer in a different proceeding. The court's use of the present tense in describing its findings, the trial court's reference to evidence introduced at the resentencing hearing that did not exist at the time of defendant's bench trial, and the court's rejection of arguments specifically made at the resentencing hearing all demonstrate this.

Nor do we find persuasive defendant's claim that the trial court's statements that it "concurs with the [a]ppellate [c]ourt's finding there was sufficient evidence to convict [defendant] on an aider and abettor theory of liability" and that it "agrees with the 1988 [a]ppellate [c]ourt decision" that defendant cannot claim self-defense demonstrate a lack of independent judgment. A judicial officer does not "agree" or "concur" in another judicial officer's opinion without first forming her own opinion. The order denying defendant's petition shows that the trial court independently considered the issues raised by defendant's petition and found guilt beyond a reasonable doubt; the fact the trial court reached the same conclusion as that reached by the judge at defendant's trial, and by the panel that heard his appeal, does not demonstrate a failure of independent review.

16

**D.    The Trial Court Did Not Commit Reversible Error by Considering the Appellate Opinion Affirming Defendant's Conviction**

Defendant next argues the trial court erred by considering the entirety of the unpublished opinion affirming defendant's conviction.  As with his previous argument, this claim arises out of amendments to former section 1170.95 that took effect after the evidentiary hearing.  At the time of the hearing at issue here, former section 1170.95, subdivision (d)(3) allowed "[t]he prosecutor and the petitioner [to] rely on the record of conviction or offer new or additional evidence to meet their respective burdens" at the evidentiary hearing.  An appellate decision was considered part of the "record of conviction" admissible in posttrial proceedings.  (See *In re W.B.* (2012) 55 Cal.4th 30, 57.)  As noted above, given this law, defendant specifically agreed that the 1988 appellate opinion was admissible at the evidentiary hearing.

However, effective January 1, 2022, the Legislature limited use of prior appellate opinions in former section 1170.95 proceedings to "the procedural history of the case recited." (*Id.*, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2.)  Defendant argues that this amendment applies retroactively to limit the admissible portion of the appellate opinion to the procedural history of the case, and that the trial court committed prejudicial error here by straying beyond that limited permitted use.

The People first argue this objection was waived below and cannot be considered on appeal.  We reject this argument.  The issue of the admissibility of the facts recited in the prior appellate opinion only arises because of a change in law that took place after the evidentiary hearing in this matter.  We do not fault

17

defense counsel for not making an objection that would have had no merit at the time of the hearing. (*People v. Harris* (2013) 57 Cal.4th 804, 840; *People v. Pearson* (2013) 56 Cal.4th 393, 461-462.)

We find the People's alternative argument that any error was harmless far more compelling. We need not decide whether any change in the admissibility of appellate opinions wrought by Senate Bill 775 applies retroactively,[7] because even if this change applied retroactively any error in admitting the appellate opinion was harmless. The evidence at the evidentiary hearing included not only the 1988 appellate opinion, but also the compete transcript of defendant's trial. Defendant does not identify any fact set out in the appellate opinion that is not also found in the trial transcript. Defendant suffered no prejudice by the trial court considering an appellate opinion containing the same facts as the indisputably admissible trial transcript. (*People v. Owens*, *supra*, 78 Cal.App.5th at p. 1027 [the "appellant suffered no prejudice by the court's consideration of" inadmissible evidence because there was nothing unfavorable to the appellant in inadmissible documents that was not also contained in admissible evidence]; *People v. Clements*, *supra*, 75 Cal.App.5th at pp. 292-293 [same].)

---

[7] See *People v. Owens*, *supra*, 78 Cal.App.5th at pages 1026-1027 (expressing doubt that changes in admissibility of evidence in Senate Bill 775 apply retroactively but declining to resolve the issue because any error in admitting evidence was harmless).

**E.    The Trial Court Did Not Commit Reversible Error by Admitting the Assessments**

Defendant argues the trial court erred by admitting the assessments that the People offered in evidence.  Defendant bases his argument on an amendment to former section 1170.95, subdivision (d)(3) that took effect on January 1, 2022, providing in pertinent part that "[t]he admission of evidence in the [evidentiary] hearing shall be governed by the Evidence Code." Relying on this language, defendant argues that the assessments contained inadmissible hearsay, and their admission was prejudicial error requiring remand for a new evidentiary hearing. The People argue that the assessments were properly admitted as reliable hearsay, and that any error in admitting them was harmless.

We need not reach the issue of admissibility because we agree with the People that, regardless of whether the records in question were admissible, defendant has not shown that any error in admitting the records requires reversal.  Article VI, section 13 of the California Constitution provides in pertinent part that "[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of . . . the improper admission or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."  This provision places the burden on defendant to show "that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

19

Defendant fails to show how he was prejudiced by the admission of any portion of any of the three assessments offered by the People. Defendant argues that the statement attributed to him in the 2009 assessment, to the effect that he should have told Cordoba to fire into the air, is "the bedrock of evidence considered by the trial court in determining that [defendant] aided and abetted the shooting and acted with reckless disregard of human life."[8] We read the court's decision very differently. Contrary to defendant's contention, the trial court specifically noted that "a reasonable person would know participating in a drive-by shooting is conduct which is inherently dangerous to human life." It supported that conclusion by noting that "the evidence demonstrated [defendant] knowingly participated in a drive-by shooting and his previous returns to the same area looking for rival gang members further buttresses the inference of his implied malice." Only after making these points did the court hold that "[a]dditionally, [defendant] acknowledged the inherent dangerousness of his conduct in his 2009 parole board statement when he stated, 'I should have told him (Cordoba) to just shoot in the air.'"

Far from being "the bedrock" of the trial court's decision, defendant's admission that he would be better off had he told Cordoba "to just shoot in the air" merely adds further corroboration to other evidence from which the trial court had found that defendant knew that shooting at people was

---

[8] The only other statement relied upon by the prosecutor during the resentencing hearing from these documents was a statement by defendant that his sister was killed in a drive-by shooting in 1975. The trial court did not reference or rely on this statement, and defendant does not argue prejudice from it.

20

inherently dangerous. Thus, it is clear the trial court would have reached the same result even if the assessments had not been admitted at the evidentiary hearing.

**F. The Resentencing Court Was Not Bound by the Original Basis for Conviction**

Defendant's penultimate contention is that the trial court erred in finding the evidence supported a finding of implied malice, when at the original bench trial the prosecution argued only an aiding and abetting theory. Defendant also argues that, because the matter was originally tried to the court and no jury instructions were given, it is possible the original trial court convicted defendant on a theory other than aiding and abetting. Because in defendant's view the original grounds for the murder conviction are unclear, and may have included a theory under which he would be eligible for resentencing, the trial court abused its discretion in finding guilt on grounds that may have differed from the original basis of conviction to render him ineligible for relief.

A number of recent decisions have rejected this argument. (E.g., *People v. Gentile* (2020) 10 Cal.5th 830, 856 ["the Legislature authorized the parties to offer new or additional evidence during the [former §] 1170.95 process in order to allow the parties to explore issues they did not explore under the prior state of the law"]; *People v. Schell* (2022) 84 Cal.App.5th 437, 444-445 [because a resentencing hearing "does not subject a defendant to the risk of additional punishment, is not a trial, permits both parties to present new evidence, and merely considers whether the defendant's request for leniency meets the necessary criteria, there is no constitutional problem in allowing new theories of murder liability at that hearing"]; *People v. Flint*

21

(2022) 75 Cal.App.5th 607, 618 [rejecting contention "that the double jeopardy clauses of the federal and state constitutions preclude the prosecution from introducing new theories of [the defendant's] guilt that it did not raise at trial"]; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813 ["By allowing new evidence and providing for an evidentiary hearing, the Legislature plainly intended that the issues concerning whether the defendant was guilty under theories of murder not previously or necessarily decided would be resolved anew, through a factfinding process affording a degree of due process to the petitioner"].) We join these courts in rejecting defendant's argument.

## G. Substantial Evidence Supports the Trial Court's Findings

Defendant finally argues substantial evidence does not support the trial court's decision that he was guilty of aiding and abetting the murder and acted with implied malice. "We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt. [Citation.]" (*People v. Clements, supra*, 75 Cal.App.5th at p. 298.) We presume in support of the decision of the trial court the

existence of every fact reasonably inferable from that evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.)

The trial court first concluded that defendant was guilty "on an aider and abettor theory of liability." To be liable as a direct aider and abettor, defendant must have, "by words or conduct, aid[ed] the commission of the life-endangering *act* . . . [with] knowledge that the *act* is dangerous to human life, and acting in conscious disregard for human life." (*People v. Powell* (2021) 63 Cal.App.5th 689, 713, fn. omitted.) "[A]n aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*People v. Gentile, supra* 10 Cal.5th at p. 850.)

The trial court's order summarized the evidence that supported a finding that defendant was guilty beyond a reasonable doubt as an aider and abettor: "[Defendant] admitted to 'riding in Fifties' hood . . . and blasted some Fifties.' This admission established [defendant]'s knowledge of Cordoba having a gun. His actions of driving his car with co-gang member Cordoba with a gun, in hostile territory, cruising slowly down the streets with headlights on, turning off the headlights, and stopping as Cordoba shot at victims Rubin and [Marvin] establish active participation in planned aggression. Moreover, his actions during the three days immediately prior to the murder of driving the same car into hostile gang territory, yelling 'now what's up' and being the undisputed shooter in two assault convictions provide further corroboration." All of this was substantial evidence supporting the court's finding that defendant aided and abetted Marvin's murder.

23

The trial court also found, in the alternative, that defendant was guilty beyond a reasonable doubt of implied malice murder. "[A] conviction for second degree murder, based on a theory of implied malice, requires proof that a defendant acted with conscious disregard of the danger to human life." (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) This standard applies even though defendant was not the actual shooter. (See, e.g., *People v. Mancilla* (2021) 67 Cal.App.5th 854, 865 ["traditional principles of implied malice" include a situation where "the defendant intends to kill or intentionally commits acts that are likely to kill with a conscious disregard for life . . . even though he uses another person to accomplish his objective"].) Implied malice may be proved by circumstantial evidence (*People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 502; *People v. Klvana* (1992) 11 Cal.App.4th 1679, 1704), and may also be inferred from the circumstances of the murder itself (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 842; *People v. Harmon* (1973) 33 Cal.App.3d 308, 311).

The facts recited by the trial court demonstrate that substantial evidence supports the court's conclusion that defendant was guilty of implied malice murder: "[Defendant]'s claim he was simply the driver and had no knowledge of Cordoba's intentions the night of the murder is unpersuasive based on the totality of his previously stated actions and admissions. Moreover, a reasonable person would know participating in a drive-by shooting is conduct which is inherently dangerous to human life. [(]See [*People v.*] *Watson* [(1981) 30 Cal.3d 290.)] Here, the evidence demonstrated [defendant] knowingly participated in a drive-by shooting and his previous

24

returns to the same area looking for rival gang members further buttresses the inference of his implied malice."

## DISPOSITION

The order denying defendant's resentencing petition is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.