Filed 2/15/24  P. v. Gonzalez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDWARDO DAMIEN GONZALEZ,<br><br>    Defendant and Appellant. | H049857<br>(Santa Clara County<br>Super. Ct. No. F1869830) |

## I.  INTRODUCTION

A jury convicted defendant Eduardo Damien Gonzalez of second degree murder (Pen. Code, § 187, subd. (a); count 1),[1] gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count 2), hit and run driving resulting in permanent serious injury or death (Veh. Code, § 20001, subds. (a) & (b)(2); count 3), driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a); count 4), driving under the influence of alcohol with a blood alcohol level of 0.08 percent or more causing injury (Veh. Code, § 23153, subd. (b); count 5), misdemeanor hit and run driving causing property damage (Veh. Code, § 20002, subd. (a)(1), (2); count 6), and misdemeanor driving when a license is suspended or revoked for a prior driving under the influence conviction (Veh. Code, § 14601.2, subd. (a); count 7).  For count 2, the jury found true

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

allegations that defendant personally inflicted great bodily injury on Dillon Oliver (§§ 667, 1192.7, subd. (c)(8)) and fled the scene (Veh. Code, § 20001, subd. (c)). For counts 4 and 5, the jury found true allegations that defendant personally inflicted great bodily injury on V.M. (§§ 12022.7, subd. (a), 1203, subd. (e)(3)), refused a peace officer's request to submit to, and willfully failed to complete, a chemical test (Veh. Code, § 23577, subd. (a)), and had a blood alcohol level of 0.15 percent or more (Veh. Code, § 23578). In bifurcated proceedings, the trial court found with regard to counts 2, 4, and 5 that defendant had previously been convicted of a violation of Vehicle Code section 23153, and that with regard to count 7, defendant had previously been convicted of a violation of Vehicle Code section 14601.2 within five years of the current offense.

The trial court sentenced defendant to 15 years to life, consecutive to 10 years, consisting of the following: 15 years to life on count 2, five years for count 2's fleeing the scene enhancement, the midterm of two years on count 4, and three years for count 4's great bodily injury enhancement. The court imposed but stayed punishment under section 654 for other counts, including 15 years to life on count 1.

Defendant contends: (1) the trial court erred when it denied his request to include a definition for "deliberately acted" in the second degree murder instruction (CALCRIM No. 520); (2) the trial court erred in responding to the jury's request to specify the act or acts involved in the murder count; (3) the cumulative prejudicial effect of the two alleged instructional errors requires reversal; and (4) remand for resentencing is required to allow the trial court to exercise its discretion under amended section 654 to impose a lesser punishment.

For reasons explained below, we find no error in the trial court's instructions, but we will reverse and remand this matter for resentencing to allow the trial court to exercise its discretion under amended section 654.

## II. BACKGROUND

On August 3, 2018, defendant caused two vehicle collisions while driving his Dodge Durango. About 7:20 p.m., a woman was driving a car with her husband in the passenger seat and their two-year-old grandson in the back seat. As their car was stopped at a light to make a left turn, defendant turned into the intersection, drove his vehicle toward the car making a "screeching" wide turn, and stopped a short distance from the woman driving the car. The woman looked at defendant, who appeared "delusional" and "wobbling." As the woman then began to drive her car forward to make the left turn, defendant reversed his vehicle a few feet and then drove forward, striking the woman's car on its rear door.

Defendant drove off after colliding with the car. A witness to the collision followed defendant. The witness obtained defendant's license plate identification when defendant's car "kind of ran into a bush." The witness described defendant as looking "glazed and confused" at that point. The witness then returned to the car that had been struck and provided the license plate identification to the car's driver and her husband, who relayed it to law enforcement.

About 7:30 p.m. – moments after defendant's collision with the car – law enforcement responded to another collision involving defendant. Oliver and V.M. were on a motorcycle when defendant veered off the road to the right, then overcorrected to the left, crossing into oncoming traffic and striking the motorcycle. Oliver died from injuries resulting from the collision and V.M. was injured, including ten broken ribs, a torn aorta, and injuries to one of her legs that required emergency surgery. Defendant did not stop at the scene of the second collision.

Witnesses to the second collision called 911. Law enforcement officers found defendant's vehicle stopped away from the scene of the collision with "significant front end damage." Defendant's eyes were "glassy and watery," his speech was "very slurred," he "had a very hard time" answering questions from law enforcement officers,

3

and he "said things that didn't make sense." In addition, as a California Highway Patrol officer approached defendant's vehicle, he saw defendant "shoving what looked like dollar bills or some kind of bills underneath the front driver's seat." This officer later inventoried the vehicle and found currency on the vehicle's floorboard, including a dollar bill that "was folded in a strange way" and contained a white powder the officer believed to be cocaine. A law enforcement official who responded to the scene of the first collision learned another collision had occurred and took the occupants of the car defendant had earlier struck to the scene of defendant's vehicle, where they confirmed it was the same vehicle that had struck them.

Defendant refused to perform field sobriety tests. Defendant agreed to provide a breath sample to measure his blood alcohol level, but he did not provide a satisfactory breath sample, blowing air from the side of his mouth instead of fully blowing into the breath machine's tube. Defendant then refused to provide a blood sample to measure his blood alcohol level. Law enforcement officials thus obtained a warrant to test defendant's blood. A blood sample taken at 10:28 p.m. measured defendant's blood alcohol level at 0.182 percent, with a margin of error of 0.007 percent. An expert toxicologist testified that a person with defendant's physical characteristics would have had a blood alcohol level of between 0.212 percent and 0.24 percent at 7:30 p.m. (the time of the second collision), assuming the person was "in a post-absorptive state," meaning at "the end of alcohol absorption, which is at or near the peak blood alcohol concentration that is achieved during that drinking episode." The blood test also confirmed the presence of cocaine in defendant's blood.

The defense presented no evidence at trial, and defendant did not testify. This appeal followed defendant's trial and sentencing.[2]

---

[2] This court granted defendant's application for relief from default for failure to file a timely notice of appeal.

# III. DISCUSSION

## A. *Defense "Deliberately Acted" Instruction Request*

### 1. Factual Background

At trial, defense counsel asked the court to modify the standard instruction on second degree murder with malice aforethought (CALCRIM No. 520). In relevant part, the jury was instructed in accordance with the standard CALCRIM No. 520 instruction as follows: "The defendant had *implied malice* if: [¶] 1. He intentionally committed the act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life." The instruction further stated: "Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time." Defense counsel asked the trial court to modify this instruction by adding a definition of "deliberately acted" with respect to the fourth component of implied malice. Defense counsel proposed that the trial court instruct the jury using the following language adapted from CALCRIM No. 521 (first degree murder): "The defendant acted deliberately if he or she carefully weighed the consideration for and against his or her choice and, knowing the consequences, decide[d] to kill."[3]

The prosecution opposed the defense's request. The prosecutor stated: "It would be nice if we had a standard definition for deliberate; however, I have been unable to

---

[3] CALCRIM No. 520 provides that a defendant acts with malice aforethought if he or she acted with either express malice or implied malice, and it states: "The defendant had *express malice* if (he/she) unlawfully intended to kill." In addition to proposing language concerning the "deliberately acted" aspect of implied malice, the defense asked the trial court to omit the portion of CALCRIM No. 520 dealing with express malice, arguing that express malice was not at issue in this case. The trial court denied this request. Defendant does not challenge this ruling.

locate one that's appropriate." The prosecutor argued that the defense's proposed instruction misstated the law, because CALCRIM No. 520 "specifically states that malice aforethought does not require deliberation or the passage within the law of a period of time." Thus, the prosecutor argued, the defense's proposed instruction conflated the notions of premeditation and deliberation (required to prove first degree murder) and "deliberately acted," which was required to prove implied malice for defendant's second degree murder count. The prosecutor asserted: "I believe that the correct definition of deliberately would be that the defendant, knowing the consequences of his acts were dangerous to human life, he acted anyway, but that is already within the definition of implied malice[,] so I don't think that definition is required." The parties then discussed the statement in CALCRIM No. 520 that malice aforethought "does not require deliberation or the passage of any particular period of time." Defense counsel requested that this statement either be deleted or modified to remove the words "deliberation or," arguing that such a change was necessary "to avoid confusion that deliberately in element number 4 is not required" or "to avoid a juror negating a component of element 4 because they believe that deliberately is the same as deliberation, and therefore, not required." In response, the prosecutor asserted that deletion or modification of this sentence was not warranted because "[d]eliberately, in section four, is a completely different use of the term than deliberation in the next paragraph." The prosecutor stated that "as far as [defense counsel's] definition of deliberately, I've said if we can find an appropriate definition, I do not object to defining it, but I do not believe that the defense's proposed definition is appropriate." Finally, the prosecutor stated: "I understand that the term deliberately in item 4 is not defined and the jury will have to be instructed that is [*sic*] the common use, the common use of that word, and they'll be able to do that. That happens throughout the jury instructions. We don't always define every word. We tell them to use its common usage."

The trial court deferred ruling on the defense's request to modify CALCRIM No. 520. The trial court stated: "[T]here are other sections in CALCRIM instructions that do[] define deliberate acts. They are specifically for specific intent crimes, and allegations with a higher level of mental state, and which is what the language you are requesting that's not appropriate [*sic*] because they are of a different category. However, I am going to also see if there's anything that defines deliberate act in a general intent type of crime."

Later, the trial court denied the defense's request to modify CALCRIM No. 520, finding the defense's proposed definition of "deliberately acted" was improper because the defense's proposed definition involved a "completely different type of mental state than here, general intent type of crime," and thus the defense's proposed instruction would misstate the law.[4] The following day, the trial court reaffirmed its denial of the defense request concerning CALCRIM No. 520. The trial court stated that it considered similar definitions of "deliberately acted" found in CALCRIM No. 560 (homicide: provocative act by defendant) and CALCRIM Nos. 727 and 728 (special circumstances: lying in wait), but it determined these were not appropriate in the instant case because "[t]hese are specific intent types of crimes . . . ." The trial court stated that it was aware that for implied malice second degree murder, "it is a specific mental state that is required," but it stated that implied malice second degree murder "is still very different from the specific type, intent type of crimes and allegations, that deliberate act was defined in the jury instructions that the court considered . . . ." Thus, the trial court

_____

[4] The trial court framed its ruling by utilizing Evidence Code section 352, which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Defendant does not challenge the trial court's ruling on the basis that the trial court utilized the Evidence Code section 352 standard, which deals with admission of evidence instead of the propriety of jury instructions.

7

instructed the jury in accordance with CALCRIM No. 520 without the defense's requested modifications.

## 2. Legal Principles and Standard of Review

"A defendant is entitled to a pinpoint instruction, upon request, only when appropriate. [Citation.] 'Such instructions relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case, such as mistaken identification or alibi. [Citation.] They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte.' [Citations.]" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.) "[A] trial court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30.)

"The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration [citations]." (*People v. Posey* (2004) 32 Cal.4th 193, 218 (*Posey*).) However, our Supreme Court has applied an abuse of discretion standard in reviewing a trial court's denial of a pinpoint instruction on the ground that it was duplicative. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 497; see also *People v. Gonzales* (2012) 54 Cal.4th 1234, 1297.)

"The failure to instruct the jury on an appropriate pinpoint instruction on the defense's theory of the case is reviewed for harmless error under *People v. Watson* (1956) 46 Cal.2d 818, 836. [Citations.]" (*People v. Zemek* (2023) 93 Cal.App.5th 313, 347.) However, if the trial court's error "amounted to more than a failure to give a pinpoint instruction" because the instruction provided was "incomplete and misleading" and "amounted to misinstruction on an element of the offense," the error is tested for harmlessness under the standard outlined in *Chapman v. California* (1967) 386 U.S. 18,

8

24 (*Chapman*). (*People v. Wilkins* (2013) 56 Cal.4th 333, 349–350.) Under this standard, "[i]n deciding whether a trial court's misinstruction on an element of an offense is prejudicial to the defendant, we ask whether it appears ' " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " ' [Citation.] ' "To say that an error did not contribute to the verdict is . . . to find that error unimportant *in relation to everything else the jury considered on the issue in question, as revealed in the record*." ' [Citation.]" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1013.)

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Such malice "may be express or implied." (§ 188, subd. (a).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188, subd. (a)(2).) "If it is shown that the killing resulted from an intentional act with express or implied malice, . . . no other mental state need be shown to establish the mental state of malice aforethought." (§ 188, subd. (b).) A "willful, deliberate, and premeditated killing" is murder of the first degree. (§ 189, subd. (a).) "All other kinds of murders are of the second degree." (§ 189, subd. (b).)

"Malice is implied when the killing is proximately caused by ' "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his [or her] conduct endangers the life of another and who acts with conscious disregard for life." ' [Citation.] In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143 (*Knoller*).) Thus, "implied-malice murder has a physical component: an act whose natural consequences are dangerous to life. And it has a mental component: defendant's deliberate performance of the act with conscious disregard for life, knowing the act endangers another's life. [Citation.] The mental component calls for a subjective inquiry into a

9

defendant's state of mind and requires 'a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard.' [Citation.] The mental component may be absent even if defendant's intentional acts are inherently dangerous in the abstract or would appear risky to a reasonable person. [Citations.]" (*In re Ferrell* (2023) 14 Cal.5th 593, 604 (*Ferrell*).)

"[M]alice may be implied when a person drives a motor vehicle under the influence of alcohol and kills someone. [Citation.]" (*People v. Lagunas* (2023) 97 Cal.App.5th 996, 1005.) Thus, in *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), the California Supreme Court held that where the defendant drove while intoxicated and killed two people, his actions "reasonably and readily support a conclusion that defendant acted wantonly and with a conscious disregard for human life." (*Id.* at p. 301.) "Since *Watson*, appellate courts have upheld numerous murder convictions in cases where defendants have committed homicides while driving under the influence of alcohol. [Citations.] These opinions have generally relied on some or all of the factors that were present in *Watson*: '(1) blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving.' [Citation.] However, 'courts have recognized that there is no particular formula for analysis of vehicular homicide cases, instead requiring a case-by-case approach.' [Citation.]" (*People v. Suazo* (2023) 95 Cal.App.5th 681, 692–693 (*Suazo*).)

### 3. Analysis

Defendant argues that the trial court erred because his proposed instruction was accurate under the plain meaning of the term "deliberate," and he cites *Ferrell* in arguing that his instruction was legally correct. He contends that his federal constitutional rights were violated by the failure to give this instruction because his defense focused on the issue of whether he deliberately acted, and the trial court's refusal to provide his requested instruction resulted in incomplete instructions. He argues that the trial court's

10

decision not to provide this instruction was not harmless under the *Chapman* standard because the jury "struggled" with the question of whether defendant acted deliberately. In the alternative, defendant argues that if this court determines defendant forfeited this issue because his trial counsel failed to propose an alternative definition that did not include the phrase "decide[d] to kill" (a phrase he concedes was not applicable in this case), then he received ineffective assistance of counsel.

We find no error in the trial court's refusal to give the defense's requested instruction defining "deliberately acted," or in failing to more specifically tailor the defense's requested instruction to omit the reference to "decide[d] to kill."[5]  The parties agree that the de novo standard of review is appropriate.  While our Supreme Court has applied the abuse of discretion standard of review to some issues regarding refusal to provide a pinpoint instruction, we assume without deciding that the de novo standard of review is appropriate, based on the parties' agreement on the standard of review and because one of the issues the parties raise is whether the requested instruction incorrectly stated the law.  (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 622, fn. 3.)

Defendant sought to use a definition of "deliberately" that applies in the context of first degree murder, not second degree implied malice murder.  First degree murder under section 189 requires that the defendant engage in a "deliberate" killing, which "refers to careful weighing of considerations in forming a course of action . . . ."  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)  Second degree murder does not require the defendant to act deliberately within the meaning of first degree murder.  As CALCRIM No. 520 states, malice aforethought "does not require deliberation or the passage of any particular period of time."

In common usage, the word "deliberate" has multiple meanings, one of which is "[d]one with or marked by full consciousness of the nature and effect; intentional," while

---

[5] Both parties characterize the defense's requested instruction as a pinpoint instruction.  We accept that characterization for purposes of this analysis.

another sense of the word is "[a]rising from or marked by careful consideration:  a *deliberate decision*."  (American Heritage Dict. Online (2024) <https://www.ahdictionary.com/word/search.html?q=deliberate> [as of Feb. 15, 2024], archived at:  <http://perma.cc/6ES5-2DV4>.)  Courts have long recognized that variations of the word "deliberate" carry different meanings in the first degree murder context as compared to malice aforethought for second degree murder.  (See *People v. Valentine* (1946) 28 Cal.2d 121, 131–132 ["Deliberate intent . . . is not an essential element of murder, as such.  It is an essential element of one class only of first degree murder and is not at all an element of second degree murder"]; *People v. Bender* (1945) 27 Cal.2d 164, 180–181 ["[M]alice aforethought is not synonymous with the elements of deliberation and premeditation which must accompany a homicide to characterize it as murder of the first degree"]; *People v. Thomas* (1945) 25 Cal.2d 880, 901 ["It is obvious that the phrases 'malicious intent' and 'malice aforethought' are not synonymous with 'willful, deliberate, and premeditated' intent"]; *In re Thomas C.* (1986) 183 Cal.App.3d 786, 796 ["The use of the term 'deliberate intention' for malice aforethought, as required in second degree murder, is not synonymous with the term 'deliberate,' as used in defining first degree murder"]; *People v. Washington* (1976) 58 Cal.App.3d 620, 624 ["Malice aforethought as required in second degree murder is not synonymous with the term deliberate as used in defining first degree murder"].)

The trial court correctly observed that other instructions providing similar definitions of "deliberately acted" to the definition defendant requested involve different mental states than implied malice second degree murder.  (See CALCRIM No. 560 [defining deliberately acted in the context of deliberation and premeditation for first degree murder]; CALCRIM Nos. 727, 728 [defining deliberately acted for first degree murder by intentionally killing a victim by means of lying in wait].)  In addition, our Supreme Court has stated that in the context of cases involving implied malice murder, the " 'better practice . . . is to charge juries solely in the straightforward language of the

"conscious disregard for human life" definition of implied malice,' " citing CALCRIM No. 520 with approval. (*Knoller, supra*, 41 Cal.4th at p. 152.) "[W]here standard instructions fully and adequately advise the jury upon a particular issue, a pinpoint instruction on that point is properly refused." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 857.)

Defendant's reliance on *Ferrell* is misplaced. In *Ferrell*, the California Supreme Court held that jury instructions erroneously permitted the petitioner's second degree murder conviction based on an invalid felony-murder theory. (*Ferrell, supra*, 14 Cal.5th at pp. 596–597.) The court further held that the jury's finding that the petitioner intentionally discharged a firearm and caused death in committing his offense failed to establish "the mental component of implied malice, which requires a defendant to act with a conscious disregard for life, knowing his act endangers another's life" because the jury could have made this finding while concluding that the petitioner did not believe he was shooting toward any person. (*Id.* at p. 597.) The court observed that the mental component of implied malice requires the "defendant's deliberate performance of the act with conscious disregard for life, knowing the act endangers another's life," and that the " 'defendant *actually appreciated* the risk involved, i.e., a *subjective* standard,' " while the jury's finding required "only an intent to discharge a firearm, not subjective awareness of a risk or disregard for life. [Citations.]" (*Id.* at p. 604.)

*Ferrell* did not state that an instruction akin to the one defendant requested is appropriate or required. The court stated that the mental component of implied malice requires the "defendant's deliberate performance of the act with conscious disregard for life, knowing the act endangers another's life," and that the " 'defendant *actually appreciated* the risk involved, i.e., a *subjective* standard.' [Citation.]" (*Ferrell, supra*, 14 Cal.5th at p. 604.) Here, defendant's proposed instruction did not incorporate this language. Rather, defendant's proposed instruction would have required the jury to conclude that defendant "carefully weighed the considerations for and against" his choice

"and, knowing the consequences," decided to act. *Ferrell* does not require that a defendant "carefully weigh[]" his or her choices before acting. Rather, the *Ferrell* court stated that the defendant must deliberately perform the act with conscious disregard for human life. (*Ibid.*) The trial court here, using CALCRIM No. 520, correctly instructed the jury on these requirements for implied malice. The court in *Ferrell* also stated that to be guilty of implied malice second degree murder, a defendant must " '*actually appreciate*[] the risk involved.' " (*Ferrell*, *supra*, at p. 604.) The trial court here, utilizing CALCRIM No. 520, satisfied this requirement by requiring the jury to find defendant "knew his act was dangerous to human life" and "deliberately acted with conscious disregard for human life." The *Ferrell* court did not state that CALCRIM No. 520 is incomplete or that a pinpoint instruction defining "deliberately acted" is necessary or appropriate.

Moreover, defendant asserts that his proposed definition of "deliberately acted" is consistent with the plain meaning of "deliberate," which he asserts is " 'characterized by or resulting from careful and thorough consideration,' or 'characterized by awareness of the consequences.' [Citation.]" As discussed above, the word "deliberate" has multiple meanings, and courts have held that variations of the word "deliberate" have different meanings when used for first degree murder as compared to malice aforethought for second degree murder. However, if defendant is correct that his proposed instruction captured the plain meaning of the term "deliberate," then the trial court did not err in denying his proposed instruction as duplicative. The jury was instructed that "[w]ords and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings." "It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions. [Citation.]" (*People v. Gonzales* (2011) 51 Cal.4th 894, 940.) The California Supreme Court has stated that the definition of implied malice is "straightforward." (*People v. Dellinger* (1989) 49 Cal.3d 1212, 1215, 1221.) Because, as defendant asserts, his

14

proposed definition captured the plain meaning of the term "deliberate," the trial court did not err in rejecting his proposed instruction as duplicative. (See *People v. Hawkins* (1995) 10 Cal.4th 920, 965 ["[I]t is well established that the words ' "aggravating" and "mitigating" are commonly understood terms that the trial court need not define for the jury.' [Citation.] Accordingly, a court need not give an instruction clarifying these terms on defendant's request, and therefore certainly has no sua sponte obligation to do so. [Citation.]"], overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89.)

Even if the trial court erred in failing to provide the defense's requested instruction concerning the meaning of "deliberately acted," any error was harmless. Assuming without deciding that defendant is correct that the *Chapman* standard for determining harmless error applies, defendant's claim would fail because we conclude beyond a reasonable doubt that any instructional error did not contribute to the verdict. (*Chapman*, *supra*, 386 U.S. at p. 24.) As discussed above, the requested instruction merely would have instructed the jury to use what defendant asserts is the plain meaning of the term "deliberately acted," and the jury convicted defendant after being instructed to utilize ordinary, everyday meanings of words and phrases not specifically defined. The evidence that defendant committed implied malice second degree murder was strong. As the prosecution argued, defendant had previously been convicted for driving under the influence of alcohol and had acknowledged at that time that driving under the influence is dangerous to human life, and that if he continued to drive under the influence and someone was killed as a result, he could be charged with murder.[6] The prosecutor argued

---

[6] The prosecution introduced court records from defendant's previous no contest plea for misdemeanor driving under the influence of alcohol with a blood alcohol level of 0.08 percent or more causing injury (Veh. Code, § 23153, subd. (b)) and misdemeanor leaving the scene of an accident (Veh. Code, § 20001, subd. (a)). In these records, defendant initialed next to the following statement: "I understand that being under the influence of alcohol or drugs, or both, impairs my ability to safely operate a motor
(continued)

that defendant's actions leading up to the fatal collision – including the amount of alcohol he consumed, his use of cocaine, and his decision to keep driving even after the first collision – demonstrated that defendant deliberately acted with conscious disregard for human life. Defendant argues in the second issue below that the jury deliberated at length on the second degree murder count and asked the trial court to specify the "act" defendant was alleged to have committed for the second degree murder count, but the jury did not raise any similar question regarding the definition of "deliberately acted." CALCRIM No. 520 contained the correct standard for implied malice, and defense counsel specifically noted in closing the importance of the "deliberately acted" component of implied malice, noting the "difference between an act and a deliberate act," and arguing that this component required that defendant "actually thought about the danger to human life." Even if a pinpoint instruction should have been given in this case, "the error would be harmless, as 'nothing in [the standard instructions given] *precluded* the jury from finding' " guilt based on a valid theory "and counsel's arguments to the jury fully explicated the defense theme . . . ." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144.)

Because we find no error in the trial court's denial of defendant's requested instruction, we need not address the Attorney General's additional argument that the requested instruction was erroneous because it would require the jury to conclude defendant "decide[d] to kill," a principle not at issue in this case, and that the trial court was not required to correct this portion of the instruction. We have found no error in the trial court's decision not to provide the requested instruction regardless of the "decide[d] to kill" language. Thus, trial counsel was not ineffective for failing to propose an

vehicle, and it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If I continue to drive while under the influence of alcohol or drugs, or both, and as a result of my driving, someone is killed, I can be charged with murder."

alternate definition, as such a request would have been futile. (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) Additionally, even if the trial court was required to utilize the requested instruction, and even if trial counsel performed deficiently in failing to modify the instruction to remove reference to "decide[d] to kill," our conclusion that any error in failing to provide the requested instruction was harmless beyond a reasonable doubt means defendant was not prejudiced by any deficient performance by his trial counsel.

### B. Trial Court's Response to Jury's Question

On the second day of the jury's deliberations, the jury submitted the following question to the trial court: "Regarding count 1 in jury instructions, what is the definition of the 'act'[?] Is it everything that led up to the collision with the motorcycle or is it DUI, crossing the yellow line, hitting the victim that caused his death, or something else?" The trial court, with the agreement of counsel for both parties, responded, "Please refer to Instruction 520 for Count 1." Forty-seven minutes later, the jury also asked the trial court to provide nine copies of CALCRIM No. 520, and the trial court complied with this request. The trial court addressed both questions at the same time.

Defendant contends that the trial court erred in its response to the jury's request to specify the act or acts at issue for the second degree murder count. Defendant argues: "The court's response to the jurors' inquiry merely referring them back to the very instruction causing the confusion was error because the court's 'mandatory' obligation under section 1138 to 'clear up any instructional confusion expressed by the jury' required more. [Citation.]" His argument builds off his first issue above, as he argues that the alleged error in responding to the jury's question "compounded" the alleged error concerning the requested definition of "deliberately acted." He argues that this issue is cognizable even though his trial counsel agreed to the trial court's response to the jury, and defendant further asserts the trial court had a sua sponte duty to provide an adequate response to the jury and the trial court's alleged failure affected his substantial rights

17

under section 1259.[7]  Alternatively, if this court finds this issue was forfeited, defendant asserts that he received ineffective assistance of counsel.

Section 1138 provides that when the jury "desire[s] to be informed on any point of law arising in the case, . . . the information required must be given . . . ."  "The court has a primary duty to help the jury understand the legal principles it is asked to apply.  [Citation.]  This does not mean the court must always elaborate on the standard instructions.  Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information.  [Citation.]  Indeed, comments diverging from the standard are often risky.  [Citation.]"  (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*).)  "But a court must do more than figuratively throw up its hands and tell the jury it cannot help.  It must at least *consider* how it can best aid the jury.  It should decide as to each jury question whether further explanation is desirable, or whether it should merely warrant the instructions already given."  (*Ibid.*)  "A violation of section 1138 does not warrant reversal unless prejudice is shown."  (*Ibid.*)

"An appellate court applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury."  (*People v. Waidla* (2000) 22 Cal.4th 690, 745–746 (*Waidla*).)  "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration [citations]."  (*Posey*, *supra*, 32 Cal.4th at p. 218.)

Defendant asserts a de novo standard applies in our review of the trial court's response to the jury's question.  The Attorney General does not argue whether the de

_____

[7] Section 1259 provides in relevant part:  "The appellate court may . . . review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."

novo standard or abuse of discretion applies to our review of this issue, instead arguing that defendant forfeited this claim. We assume without deciding that defendant has not forfeited this issue by agreeing with the trial court's response to the jury's question. We will apply the abuse of discretion standard in reviewing the trial court's response to the jury's question, and the de novo standard of review in assessing whether the trial court's instructions correctly state the law. (*Waidla*, *supra*, 22 Cal.4th at pp. 745–746; *Posey*, *supra*, 32 Cal.4th at p. 218.)

In closing arguments, the parties presented different theories of the act or acts that were at issue in count 1. The prosecutor argued concerning the "deliberately acted" component of implied malice: "He deliberately acted with conscious disregard. So let's see what the defendant did. As I said, at the beginning, everything the defendant did that day, every decision he made is what you need to look at to determine whether he acted with implied malice." The prosecution cited the amount of alcohol defendant would have had to consume to reach his blood alcohol level, his use of cocaine, his decision to drive without a valid driver's license, his fleeing the scene after the first collision, testimony that defendant ran his car into a bush after the first collision, and his actions during and after the second collision, arguing: "Every decision the defendant made that day showed he had conscious disregard for -- disregarded the risk and knew that his actions were going to injure a human life." In contrast, defense counsel argued: "Now, a significant component of the analysis here calls into question the act, deliberately acted with conscious disregard to human life, okay? And therefore, which act? Specifically which act are we looking at that he engaged in that showed a conscious disregard for human life? It can't simply be the D.U.I." Defense counsel argued that the act of driving under the influence in and of itself could not constitute the act at issue, because then every act of driving under the influence resulting in death would constitute murder. Defense counsel asked the jury to focus on defendant's specific act of overcorrecting after veering off the road, arguing that this did not constitute a deliberate act taken with conscious

19

disregard for human life. The prosecutor then argued: "The act we're talking about is not crossing that double yellow line which caused [Oliver's death]. The act we're talking about for implied malice murder is driving under the influence of alcohol. That is the act that is inherently dangerous to human life; that is the act that the defendant deliberately committed which caused [Oliver's] death."

The jury asked the trial court to resolve this dispute concerning which act or acts were at issue for count 1, and the trial court referred the jury back to CALCRIM No. 520. We find no error in the trial court's response. The evidence at trial presented several options for the act or acts at issue. In *Watson*, our Supreme Court cited various acts that supported the defendant's conviction for second degree murder: the defendant's blood alcohol level, the defendant's predrinking intent to drive, his awareness of the hazards of driving while intoxicated, and his dangerous acts while driving. (*Watson*, *supra*, 30 Cal.3d at pp. 300–301.) Each homicide case involving driving under the influence " 'require[es] a case-by-case approach.' " (*Suazo*, *supra*, 95 Cal.App.5th at p. 693.) Thus, defendant does not argue that the trial court was required to tell the jury which act or acts could potentially form the basis for a second degree murder conviction, noting that this was a matter for the jury to decide.

Instead, defendant asserts the trial court should have instructed the jury that it was the jury's responsibility to decide which deliberate act or acts may have caused Oliver's death. Defendant contends that the trial court should have instructed jury to the effect of the following: "You, the jury, must decide what is the deliberate act or acts which caused death. The instruction will not tell you that. You must decide whether the acts taken by defendant, beginning with driving under the influence, and ending with the fatal collision, taken together, or considered separately, caused death." Defendant argues that CALCRIM No. 520 does not specifically inform the jury that the jury must decide what act or acts are at issue, and that "[t]he court's failure to answer the question directly and correctly was critical because the jury could have determined that it did not have the

20

authority to determine that the 'act' was anything other than what the prosecutor had told them, i.e., the act of driving under the influence."

Defendant contends that the trial court should have informed the jury that it was up to the jury to decide the act or acts at issue for count 1. However, by referring the jury to CALCRIM No. 520 and by not specifying what act or acts were at issue, the trial court conveyed that this matter was for the jury to decide. While CALCRIM No. 520 does not specifically inform the jury that it must decide what act or acts are at issue, the jury was implicitly informed that this question was the jury's responsibility. In accordance with CALCRIM No. 520, defendant's jury was instructed as follows: "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is a natural and probable, consider all of the circumstances established by the evidence."

" ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) Intelligent jurors would have understood the language of CALCRIM No. 520 and the trial court's response as directing the jury that it was the jury's responsibility – not the trial court's – to answer the question of what act or acts were at issue. The jury's second question requesting nine copies of CALCRIM No. 520, submitted 47 minutes after the jury's first question, indicates the jury's focus on finding the answer to the first question may have led the jury to this instruction. The parties' arguments put the jury on notice that a question for the jury to decide concerning count 1 was which act or acts were at issue. Defendant provides no basis to conclude that the jury would believe it automatically had to adopt the prosecutor's view on this question

21

when the parties' arguments evinced different views about the act or acts at issue. In any event, the prosecutor did not argue that the act of driving under the influence was the only "act" at issue, instead arguing that the total of defendant's actions demonstrated he deliberately acted with conscious disregard for human life. By not specifying an act or acts at issue and instead pointing the jury back to CALCRIM No. 520, the trial court implicitly informed the jury that the question was up to the jury.

As discussed above, CALCRIM No. 520 accurately provided the jury with the instructions to prove implied malice second degree murder. Because "the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." (*Beardslee*, *supra*, 53 Cal.3d at p. 97.) Defendant argues that the trial court's response " 'compounded' " its earlier error in failing to provide the defense's requested instruction concerning the definition of "deliberately acted." However, as discussed above, the trial court committed no error regarding the defense's requested instruction, and thus there was no error to compound. Defendant also cites *People v. Gonzales* (1999) 74 Cal.App.4th 382 (*Gonzales*) and *People v. Loza* (2012) 207 Cal.App.4th 332 (*Loza*) to support his argument that the trial court was required to respond differently to the jury's question, but neither case is on point. In *Gonzales*, the defendant was convicted of willful infliction of corporal injury on a cohabitant, and the Court of Appeal held that the trial court erred by not providing the jury with a definition of the term "willful intent" when the jury asked for one. (*Gonzales*, *supra*, at p. 390.) In *Loza*, the jury asked for additional guidance concerning the requirements for aiding and abetting, and the Court of Appeal held that the defendant's trial counsel provided ineffective assistance of counsel by not objecting to the trial court's response pointing the jury back to the instructions provided because "the trial court failed to clarify for the jury not only that it was required to consider an aider and abettor's mens rea, but that mens rea is personal to the aider and abettor and is not tied to the mens rea of the direct

22

perpetrator." (*Loza*, *supra*, at p. 355.) The instant case is different. As defendant acknowledges, here there was no definition or other legal standard to provide; the matter of determining the act or acts at issue belonged to the jury. By declining to specify the act or acts at issue, the trial court fulfilled its obligations by implicitly informing the jury that the question was a matter for the jury to decide. (*Beardslee*, *supra*, 53 Cal.3d at p. 97.) The trial court did not err in responding to the jury's question by referencing CALCRIM No. 520.

Even if the trial court erred, we find any error to be harmless for similar reasons to those stated in the first issue above. The evidence against defendant was strong, and if the trial court did instruct the jury that it was the jury's responsibility to determine the act or acts at issue, the jury would have reached the same verdict. Additionally, because we have analyzed defendant's claim on the merits without considering it forfeited, defendant's ineffective assistance of counsel claim is inapplicable.

**C.** *Cumulative Error*

Defendant argues that the cumulative prejudicial effect of the alleged instructional errors deprived him of a fair trial. "The premise behind the cumulative error doctrine is that, while a number of errors may be harmless taken individually, their cumulative effect requires reversal. [Citations.]" (*People v. Mani* (2022) 74 Cal.App.5th 343, 378 (*Mani*).) We have found no error in regard to the two issues defendant raises above. Thus, we reject defendant's cumulative error argument.

**D.** *Penal Code Section 654 Amendment*

At the time of defendant's initial sentencing hearing, section 654 provided in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, former subd. (a).) Effective January 1, 2022, section 654 was amended to read in relevant part: "An act or omission that is punishable

23

in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a), as amended by Stats. 2021, ch. 441, § 1.) "Previously, under section 654, 'the sentencing court was required to impose the sentence that "provides for the longest potential term of imprisonment" and stay execution of the other term. [Citation.] . . . [S]ection 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence.' [Citation.]" (*People v. Jones* (2022) 79 Cal.App.5th 37, 45 (*Jones*).)

" ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." ' [Citation.] ' "[A] court that is unaware of its discretionary authority cannot exercise its informed discretion." ' [Citation.] 'Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing.' [Citation.]" (*People v. Czirban* (2021) 67 Cal.App.5th 1073, 1096–1097.) When a statute retroactively supplies a trial court with sentencing discretion, remand is required unless the record provides a "clear indicator of how the trial court would exercise its new discretion . . . ." (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1033.)

Defendant contends that remand for resentencing is necessary because amendments to section 654 that became effective after his sentencing hearing provide the trial court with discretion as to which counts to stay. He asserts that the record does not clearly indicate that the court would not have stayed the sentence for count 2 (15 years to life plus a mandatory consecutive term of five years pursuant to the enhancement allegation) in favor of the lesser 15-years-to-life sentence on count 1 if the trial court had been aware of the discretion the Legislature later granted it, and thus remand is required. The Attorney General concedes that remand for resentencing is required because the

amendments to section 654 are ameliorative changes that apply retroactively to defendant's nonfinal judgment under *In re Estrada* (1965) 63 Cal.2d 740.

We agree with the parties that the amendment to section 654 applies retroactively to defendant's judgment. (*People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 926; *People v. Fugit* (2023) 88 Cal.App.5th 981, 995–996; *Jones*, *supra*, 79 Cal.App.5th at p. 45; *Mani*, *supra*, 74 Cal.App.5th at pp. 379–380; *People v. Sek* (2022) 74 Cal.App.5th 657, 673.) Therefore, remand for full resentencing is appropriate. (*Jones*, *supra*, at p. 45.)

## IV. DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for full resentencing under current law.

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____
DANNER, J.

_____
BROMBERG, J.

*People v. Gonzalez*
**H049857**