Filed 9/13/24  P. v. Wiltshirebeal CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAMANI JERRY WILTSHIREBEAL,<br><br>    Defendant and Appellant. | D082374<br><br><br><br>(Super. Ct. No. SCD293611) |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant, by appointment.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Eric Tran, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

After he and his friend Samuel Perez had been kicked out of a bar, Damani Jerry Wiltshirebeal shot and killed Kyle Delangel, an unarmed man. A jury convicted Wiltshirebeal of first degree murder (Pen. Code, § 187, subd.

(a))[1] and found true the special allegation that he personally used a firearm to commit the offense and caused great bodily injury (§ 12022.53, subd. (d)). On appeal, Wiltshirebeal contends (1) there was insufficient evidence to support the first degree murder conviction or to establish that he did not act in self-defense or under heat of passion, and (2) the trial court abused its discretion in denying Wiltshirebeal's motion to reduce the special allegation enhancement. Finding no merit in these contentions, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

At trial, Wiltshirebeal testified that a little after midnight on the evening of February 19, 2022, after consuming alcohol at Wiltshirebeal's home, codefendant Perez drove him to a local bar. Wiltshirebeal brought with him his loaded Ruger SP101 revolver, which he left in the side pocket of Perez's car door when they arrived at the bar. A couple of hours later, after drinking heavily at the bar, when it was time to close out their bar tabs, Perez had an angry confrontation with the waitress and others in the bar about the tab. Security personnel asked Perez and Wiltshirebeal to leave the bar, and they did. No one threatened them or pulled any weapons on them, and no one followed them outside.

In the parking lot, instead of leaving, Wiltshirebeal stated, "We're about to stick right here," and a new confrontation developed between Perez and some women who had just arrived. Wiltshirebeal retrieved his gun from the car door pocket. He testified that he was angry and mad, and he wanted a confrontation. He told the women, "There's about to be a whole lot of problems over here."

The women summoned help from people inside the bar, and Delangel and three other men walked out of the bar. Wiltshirebeal testified that

---

[1]     Statutory references are to the Penal Code unless otherwise indicated.

Delangel did not threaten him or Perez, was not armed, and was not aggressive.

Wiltshirebeal got into the car. Perez also got in the car and started the engine. Perez rolled down the window to argue with Delangel, and then Perez attempted to hit Delangel with the car. Delangel approached the driver's side window and punched Perez through the open window. Wiltshirebeal then aimed his revolver at Delangel's torso and fired the weapon four times at Delangel, killing him. He testified that he shot Delangel because he "thought that him and the other three people who were with him were going to continually try to attack us while we're in this vehicle [causing] further injury to myself, my friend, and the altercation could have gone bad for us." After the shooting, Perez drove his vehicle around Delangel's body, and he and Wiltshirebeal left the scene.

On cross-examination, Wiltshirebeal testified that as an enlisted member of the United States Marine Corps, he had experience and training in the use of firearms, and that if he takes out a loaded firearm, he intends to shoot and kill. He knew the torso area was where to shoot someone to kill them. His Marine training included the dangers of drinking alcohol and using firearms. He also knew of Perez's proclivity to become belligerent when he had been drinking. Wiltshirebeal had access to ride-sharing services on his cell phone and could have left the scene without Perez.

The jury found Wiltshirebeal guilty of the first degree murder of Delangel and found true the special allegation he personally used a firearm in the commission of the offense, causing great bodily injury.

In his statement in mitigation filed prior to sentencing, Wiltshirebeal emphasized his troubled upbringing and his struggles with alcoholism. He also submitted a report from psychologist Abraham Loebenstein, who

3

discussed Wiltshirebeal's upbringing and alcoholism and concluded that although he "has great potential for rehabilitation," Wiltshirebeal "does not meet the criteria for Posttraumatic Stress Disorder." The statement in mitigation noted that Wiltshirebeal was twenty-three years old at the time of the offense.

The trial court sentenced Wiltshirebeal to 25 years to life for first degree murder (§ 187) and an additional 25 years to life pursuant to section 12022.53 subdivision (d), the special allegation enhancement.

DISCUSSION

Wiltshirebeal argues on appeal that the evidence was insufficient to support his conviction for first degree murder, because it failed to show he acted with malice. He also argues that the prosecution failed to prove that he did not act in self-defense, imperfect self-defense, or under the heat of passion. Finally, he argues that the court abused its discretion in failing to strike or reduce the enhancement to his sentence.

A.      *Sufficiency of the Evidence for First Degree Murder*

When we review a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment to determine if there is substantial evidence from which any reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) Because it is the exclusive province of the jury to determine credibility and to resolve evidentiary conflicts or inconsistencies, we presume the existence of every fact the jury could reasonably deduce from the evidence to support the judgment. (*Ibid.*; *People v. Young* (2005) 34 Cal.4th 1149, 1175, 1181.) If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding.

4

(*Nelson*, at p. 210.) We apply the same standard in determining the sufficiency of the evidence to establish premeditation and deliberation as elements of first degree murder. (*People v. Silva* (2001) 25 Cal.4th 345, 368.)

Murder is the "unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) A willful, deliberate and premeditated killing is first degree murder, as is a murder perpetrated by intentionally discharging a firearm from a motor vehicle at another person outside of the vehicle, "with the intent to inflict death." (§ 189, subd. (a).)

The jury was instructed as to these two theories of first degree murder. For the first theory, the jury had to find that "the People have proved that he acted willfully, deliberately and with premeditation." As to the second theory, the jury was instructed that it could find Wiltshirebeal guilty of first degree murder if the prosecution proved that Wiltshirebeal intentionally shot a person outside of his vehicle, intending to kill that person.

The jury's finding of first degree murder is amply supported by the record, particularly as to the theory of shooting outside the vehicle. Wiltshirebeal himself testified that while seated inside Perez's vehicle, he intentionally shot Delangel, who was outside the vehicle. He testified that he aimed for Delangel's torso, and conceded that "when you point[] a loaded firearm at a human being and fire that firearm at their torso area, you are intending to kill him." As to his intention to kill Delangel, the fact that he brought a loaded revolver with him that evening leads to a reasonable inference that he had considered the possibility that a violent encounter would ensue that night. (See, e.g., *People v. Lee* (2011) 51 Cal.4th 620, 636 [defendant's decision to bring a loaded handgun on the night the victim was killed indicated defendant had considered the possibility of a violent encounter]; *People v. Elliott* (2005) 37 Cal.4th 453, 471 [one could reasonably

5

infer from defendant's arming himself with a knife that he planned a violent encounter].)

Further, Wiltshirebeal's testimony that he was angry and looking for a confrontation supported an inference that when he intentionally shot Delangel, he intended to kill him. Even without reference to other circumstantial evidence of Wiltshirebeal's intent offered by the prosecution, this evidence was sufficient to support the jury's finding that Wiltshirebeal intended to kill Delangel and that he acted with express malice, i.e., with a "deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1)). The jury was not required to believe his explanation that when he fired at Delangel, he "intend[ed] to harm, not necessarily kill" him.

B. *The Evidence was Sufficient to Prove that Wiltshirebeal Did Not Act in Self-defense, Imperfect Self-defense, or Under the Heat of Passion*

In finding Wiltshirebeal guilty of first degree murder, the jury necessarily found that he acted with malice. However, a finding of malice may be negated upon proof of a belief in the need for self-defense, defense of another, or provocation. (*People v. Rios* (2000) 23 Cal.4th 450, 462.) A homicide committed during a justifiable heat of passion is not murder in the first degree; depending upon the surrounding circumstances, including the extent of the provocation and whether there was time for tempers to cool, such a homicide may be murder of the second degree or voluntary manslaughter. (*People v. Nero* (1971) 19 Cal.App.3d 904, 912.)

On appeal, Wiltshirebeal contends that "he actually believed the use of deadly force was necessary at that moment." At trial, he testified that he "thought that [Delangel] and the other three people who were with him were going to continually try to attack us while we're in this vehicle [causing] further injury to myself, my friend, and the altercation could have gone bad for us." As to self-defense or the defense of another, even if the jury could have

6

found that Wiltshirebeal reasonably believed that either he or his friend Perez were in imminent danger of suffering great bodily injury as a result of a punch directed at Perez through an open car window by an unarmed man, it could not have concluded that shooting Delangel four times in the torso at close range was a reasonable amount of force to defend against that danger. (See, e.g., *People v. Morales* (2021) 69 Cal.App.5th 978, 995 (*Morales*) [defendant's belief that "someone is going to punch him in the arm and stabs him to death in response," thereby "us[ing] more force than was necessary," cannot claim self-defense].)

As to the sufficiency of the evidence for imperfect self-defense, the same analysis applies. (See *Morales, supra,* 69 Cal.App.5th at p. 995 [if defendant uses more force than necessary in defense, he cannot claim either perfect self-defense or imperfect self-defense].) The jury could reasonably reject Wiltshirebeal's argument that he had a subjective belief (albeit unreasonable) that he needed to shoot Delangel in order to defend Perez. Instead, from its verdict, the jury must have credited the testimony of Wiltshirebeal and others that Wiltshirebeal shot Delangel because he was angry and actively seeking a confrontation after being asked to leave the bar, not because he felt threatened by an unarmed man outside the vehicle.

As to the contention that Wiltshirebeal acted upon a sudden quarrel in the heat of passion, as an initial matter, we note that the "heat of passion requirement for manslaughter has both an objective and a subjective component." (*People v. Steele* (2002) 27 Cal.4th 1230, 1252; accord *People v. Moye* (2009) 47 Cal.4th 537, 549.) Objectively, " 'this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances.' " (*Steele*, at p. 1252, quoting *People v. Logan* (1917) 175 Cal. 45, 49.) Subjectively, the

7

"defendant must actually, subjectively, kill under the heat of passion." (*Steele*, at p. 1252.) Here, too, Wiltshirebeal's testimony that he was armed, angry and looking for a confrontation even before Delangel came out of the bar was sufficient for the jury to conclude that he did not act under the heat of passion. The jury could reasonably conclude that an ordinary reasonable person would not respond to a punch through a car window with four shots to the torso.

C. *The Court Did Not Abuse its Discretion in Declining to Strike or Reduce the Sentencing Enhancement under 12022.53 Subdivision (d)*

As noted above, in sentencing Wiltshirebeal, the court added twenty-five years to Wiltshirebeal's sentence based on the jury's true finding that during the offense, Wiltshirebeal discharged a firearm and caused great bodily injury (an enhancement based on the special allegation under section 12022.53 subdivision (d)). On appeal, Wiltshirebeal argues that the trial court erred in failing to expressly find that dismissal or reduction of the subdivision (d) enhancement would endanger public safety because dismissal is presumed unless rebutted by a finding that dismissal would endanger public safety. Wiltshirebeal further argues that the court failed to give sufficient weight to mitigating factors when it imposed the subdivision (d) enhancement. Among relevant mitigating circumstances were the facts that demonstrated that Wiltshirebeal had no prior record, he was under the age of 26 years old, the victim had stricken Perez, and the enhancement could result in a sentence over 20 years. He also presented the court with evidence that he had experienced psychological and physical childhood trauma, and coped with the trauma through excessive alcohol consumption. The court noted the factors in mitigation but declined to strike or reduce the enhancement. We review the denial of a motion to dismiss an enhancement for abuse of discretion. (*People v. Flores* (2021) 63 Cal.App.5th 368, 376.)

8

Our Supreme court recently addressed the issue of whether section 1385 creates a rebuttable presumption in favor of dismissal and concluded that it did not.  (*People v. Walker* (2024) 16 Cal.5th 1024.)  In *Walker*, the Court explained the trial court's proper use of section 1385, subdivision (c)(2)[2] in deciding whether to strike an enhancement.  The court held that:

> "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement.  But ultimately, the court must determine whether dismissal is in furtherance of justice.  This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' "

(*Walker*, at p. 1036, quoting *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098.)

Thus, if the trial court found substantial, credible evidence of countervailing factors, it could conclude that those factors neutralized the mitigating circumstances offered by Wiltshirebeal, even if the court did not find a danger to public safety.

---

[2]  Section 1385 subdivision (c)(2) provides in pertinent part that "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present."  The statute further provides that proof of one or more of these circumstances "weighs greatly in favor of dismissing the enhancement" unless the court finds that dismissal "would endanger public safety."  Endangering public safety is further defined as the likelihood that dismissal "would result in physical injury or other serious danger to others."

Here, the court specifically weighed mitigating factors and countervailing factors. As requested by defense counsel, the court reviewed the arguments of counsel, "consider[ing] alternatives as if I did have the discretion to select." The court noted that the murder was "gratuitous, really no provocation" and the victim, who behaved "heroically" and nobly, was unarmed. As to Wiltshirebeal, the court stated that his words and actions showed that he "intended to provoke a response" from the people in the bar, and that his selection of a powerful weapon and specialized bullets made "clear what was in his mind." The court further noted that "[t]here is nothing about the defendant's background which the court has considered – the defendant's use of alcohol, the defendant's upbringing – that excuses his behavior [and] there is nothing that I find mitigating about what happened in this case. The sole responsibility lies at his feet."

Under the standard enunciated in *Walker*, it is clear from the sentencing colloquy that the court considered factors in mitigation but as a result of substantial and credible countervailing factors, the court concluded that reduction or dismissal of the enhancement would not be in the interest of justice.

It is true that the judge did not specifically state that dismissal of the enhancement would not be in furtherance of justice. Nonetheless, on appeal, "where a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) From the court's statement at sentencing, there can be no doubt that after considering the factors, the court concluded that dismissal or reduction of the enhancement was not in furtherance of justice.

10

Here, without provocation, Wiltshirebeal acted callously and with extreme violence. For a night on the town, he brought a "powerful weapon" and bullets intended to maximize damage, and when an altercation arose, he put the handgun in his waistband, even though no one else was armed, and then used it when the victim took a swing at his friend. Under these circumstances, the trial court's implied finding that dismissal of the firearm enhancements would not be in furtherance of justice can hardly be said to have been "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377; accord *People v. Mendoza* (2023) 88 Cal.App.5th 287, 299.)

## DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DO, J.

11